[Cite as *State v. Cheesman*, 2016-Ohio-5040.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P .J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 15 CA 59 |
| JEREMY M. CHEESMAN | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common Pleas, Case No. 14 CR 449

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     July 21, 2016

APPEARANCES:

For Plaintiff-Appellee

GREGG MARX
PROSECUTING ATTORNEY
ANDREA K. GREEN
ASSISTANT PROSECUTOR
239 West Main Street, Suite 101
Lancaster, Ohio 43130

For Defendant-Appellant

SCOTT P. WOOD
CONRAD/WOOD
120-1/2 East Main Street
Lancaster, Ohio 43130

*Wise, J.*

{¶1} Appellant Jeremy Cheesman appeals his conviction and sentence entered in the Fairfield County Court of Common Pleas on one count of tampering with evidence, in violation of R.C. §2921.12(A)(1), and one count of illegal conveyance of a drug of abuse into a detention facility, in violation of R.C. §2921.36(A)(2), following a jury trial.

{¶2} Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶3} Appellant Jeremy Cheesman, who was on community control supervision at the time, failed to report to his community control officer. As a result, Appellant was arrested on a warrant on April 3, 2013, by felony probation officers in the Fairfield County Community Control Department for failing to report.

{¶4} At the time of his arrest, Appellant was asked if he had anything on him or inside of him and was patted down for weapons. (T. at 76). Appellant denied having anything on him or inside of him. (T. at 81-82). During the pat-down, Probation Officer Larry Harmon found a pen cap in Appellant's pocket. (T. at 80).

{¶5} Appellant was transported to the Fairfield County Jail, where the booking process ensued. (T. at 82).

{¶6} Pursuant to jail procedures, Appellant was asked by the jail personnel, specifically Deputy Schorr, if he had anything on him or inside of him. (T. at 85, 130). Deputy Taylor conducted another pat-down of Appellant, but first asked again if he had anything in or on him that was illegal, warning that if he did it would be considered conveyance, an additional felony with which he could be charged. (T. at 83-84, 131). Appellant answered that he did not. (T. at 133). A ball of aluminum foil was located in his

pants pocket, and in his sweatshirt was a barrel from a pen with the ink tube removed. (T. at 84). These items are commonly associated with drug use. (T. at 85).

{¶7} Deputy Schorr assisted Deputy Taylor with the pat-down at this point, and when he patted down his legs and then moved up toward the crotch area, Appellant clenched his muscles. (T. at 134). Deputy Schorr stated that this reaction is classic indication of something being hidden or concealed. (T. at 134). Appellant was also acting uneasy and nervous. (T. at 134).

{¶8} Based on Appellant's demeanor, the location of drug paraphernalia in his pocket, and other factors, Deputy Taylor sought approval from the Officer in Charge to conduct a strip search, which was granted. (T. at 135). Once the deputies received permission to conduct the strip search, Appellant stated he did not feel well. (T. at 135). He said "I don't feel right. I feel like I'm going to fall out. I feel a seizure coming on." (T. at 135).

{¶9} Appellant was taken into the change-out room by Deputies Schorr and Taylor. (T. at 86). Appellant was asked to disrobe and to turn around and cough. (T. at 137). As Appellant was taking his underwear off he told the deputies he thought he might faint. (T. at 137). Appellant slowly lowered himself to the ground and began what Deputy Schorr described as a "poor attempt to mimic" a seizure. (T. at 138-139). Appellant was rolling around on the ground, as if he was trying to get away from the deputies. (T. at 139). While Appellant was lying on the ground, he moved his hand toward his rectum, contorting it to make it small in order to fit inside of his rectal cavity. (T. at 140). It appeared that Appellant was trying to shove whatever he had farther up into his rectum. (T. at 141). The deputies yelled for Probation Officer Harmon to come into the room because they

needed assistance restraining Appellant. (T. at 87; 142). Officer Harmon witnessed Appellant shaking on the floor. (T. at 88). Officer Harmon told Appellant to "knock it off," and Appellant placed both hands over his rectal area. (T. at 88). Deputy Taylor yelled "he's trying to shove it farther up his rectum." (T. at 88-89). Officer Harmon grabbed Appellant's left arm, Deputy Taylor grabbed his right arm, and he was restrained on the floor. (T. at 88-89). Deputy Schorr saw a small piece of plastic sticking out of Appellant's rectum and was able to retrieve a plastic bag out of Appellant's rectum. (T.at 89; 141). Appellant's combative actions ceased after the plastic bag was retrieved. (T. at 89; 141).

{¶10} Inside of the plastic bag was an assortment of pills. (T. at 141). Analysis by the Ohio Bureau of Criminal Investigation revealed that Appellant had the prescription drugs Tramadol and Amitriptyline concealed inside of him on April 3, 2013. (T. at 178-211).

{¶11} As a result of the above actions, on November 21, 2014, Appellant was indicted and charged with one count of tampering with evidence, in violation of R.C. §2921.12(A)(1), a felony of the third degree, and one count of illegal conveyance of a drug of abuse into a detention facility, in violation of R.C. §2921.36(A)(2), a felony of the third degree, to which Appellant entered pleas of not guilty.

{¶12} On December 5, 2014, Appellant filed a motion to suppress, which was subsequently overruled by the trial court and is not relevant for purposes of this appeal.

{¶13} On January 12, 2015, the trial court ordered a psychiatric examination to determine the competency of Appellant, where after Appellant was found competent to stand trial by the trial court.

**{¶14}** This matter proceeded to a jury trial on October 13, 2015. At the conclusion of the two-day trial, the jury returned a verdict finding Appellant guilty of Count One and Count Two as charged.

**{¶15}** On October 30, 2015, Appellant was sentenced to serve 24 months in a state penal institution on Count Two and was sentenced to a term of community control on Count One. (Judgment Entry of Sentence, Fairfield C.P. No. 2014-CR-449, Nov. 10, 2015).

**{¶16}** Appellant now appeals to this Court, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶17}** "I. THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE TO PROVE AN ESSENTIAL ELEMENT OF THE OFFENSE.

**{¶18}** "II. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION."

### I.

**{¶19}** In his First Assignment of Error, Appellant argues that the trial court erred in admitting hearsay evidence. We disagree.

**{¶20}** Specifically, Appellant argues that the State's expert witness, Michelle Taylor, relied on an internet database to form her opinion that the pills which Appellant had on him were "dangerous drug(s)" asset froth in R.C. §4729.01(F), and therefore constituted hearsay.

**{¶21}** Hearsay is defined in Evid.R. 801 as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth

of the matter asserted." Evid.R. 802 governs the admissibility of hearsay evidence and indicates that hearsay is inadmissible in the absence of an exception.

{¶22}  "The determination of the admissibility of expert testimony is within the discretion of the trial court. * * * Such decisions will not be disturbed absent abuse of discretion. * * * 'Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability." *Valentine v. Conrad,* 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9.   A trial court possesses broad discretion with respect to the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay. *State v. Essa*, 194 Ohio App.3d 208, 2011–Ohio–2513, 955 N.E.2d 429, ¶ 124 (8th Dist.), citing *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2009–Ohio–1133, ¶ 4 (overruled on other grounds).

{¶23} Previously, Evid.R. 706 had provided that learned treatises could only be used on cross-examination to impeach a witness. In 2006, that rule was repealed and Evid.R. 803(18) was enacted.

{¶24}  Evid.R. 803(18) provides that the following is "not excluded by the hearsay rule":

{¶25} "To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

**{¶26}** The new rule allows for a learned-treatise exception to the hearsay rule. *State v. Henry*, 11th Dist. No. 2007–L–142, 2009–Ohio–1138, ¶ 88–89.

**{¶27}** Even before those amendments, courts had allowed general references to literature in the expert's field. The Ohio Supreme Court has stated, "There is a difference between a witness's referring to specific statements in professional literature as substantive evidence and an expert witness's referring to the literature as being part of the basis for that expert's opinion. While the former reference would be inadmissible hearsay, numerous courts in Ohio have held that the latter reference is admissible. We agree with the decisions in those cases." *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005–Ohio–4787, 834 N.E.2d 323, ¶ 24 (emphasis in original).

**{¶28}** In *Beard v. Meridia Huron Hosp., supra*, the Ohio Supreme Court stated that:

**{¶29}** "Because works of professional literature contain statements that if introduced as evidence would fall within the definition of hearsay, and because the Ohio Rules of Evidence, unlike the Federal Rules of Evidence, do not contain a learned-treatise exception to the hearsay rule, such works 'are inadmissible as independent evidence of the theories and opinions therein expressed.' * * * *Piotrowski v. Corey Hosp.* (1961), 172 Ohio St. 61, 69, 15 O.O.2d 126, 173 N.E.2d 355. In *Piotrowski,* we noted that the reasons for exclusion include the inability to verify the validity of the opinions and conclusions within the works and the lack of opportunity to cross-examine the authors of those opinions and conclusions. * * * If, during direct examination, a witness were permitted to offer statements from professional literature to prove the truth of the matter asserted in those statements, the witness would be acting as a conduit for the out-of-court statements

of the authors of those literary works." *Beard,* 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 23.

**{¶30}** The Ohio Supreme Court concluded in *Beard* that an expert's opinion is admissible, when the expert relies, in part, on professional literature in forming his opinion. The court observed that:

**{¶31}** "There is a difference between a witness's referring to specific statements in professional literature as substantive evidence and an expert witness's referring to the literature as being part of the basis for that expert's opinion. While the former reference would be inadmissible hearsay, numerous courts in Ohio have held * * * that the latter reference is admissible. We agree with the decisions in those cases.

**{¶32}** "Our decision is consistent with the Ohio Rules of Evidence. Evid.R. 702(B) provides that a 'witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony.' Pursuant to this rule, a witness becomes qualified to testify as an expert by virtue of the fact that he or she has been exposed to and has absorbed information from sources that may not be admissible under the Rules of Evidence. Evid.R. 703 states that an expert witness may base his or her opinion on facts or data 'perceived by him or admitted in evidence at the hearing.' However, we have acknowledged that information that would not be admissible at trial may serve as a basis for an expert's background knowledge without violating Evid.R. 703. * * * Moreover, Evid.R. 706, the rule that permits impeachment with statements from learned treatises, is based on the premise that experts are likely to rely on professional literature in forming their opinions. Cf. *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph two of the syllabus (holding that 'the substance of

[a] treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise * * * or has acknowledged its authoritative nature').

{¶33} Experts have been permitted to testify regarding the information that provides the basis for their opinions. *See State v. Echols* (1998), 128 Ohio App.3d 677, 698, 716 N.E.2d 728. Because experts are permitted to base their opinions on their education, including their review of professional literature, training, and experience, it follows that experts are also permitted to testify regarding that information. Accordingly, we hold that expert witnesses are permitted to testify that their opinions are based, in part, on their review of professional literature. *Beard,* 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 24–26.

{¶34} In the case *sub judice*, Forensic Scientist Michelle Taylor from the Ohio Bureau of Criminal Investigation testified that the two drugs Appellant had on him were Tramadol and Amitriptyline, and that both of these drugs could only be obtained by way of a prescription. (T. at 205-206). Ms. Taylor testified she independently tested the drugs and confirmed that they were in fact the drugs indicated in the reference database. (T. at 1880192; 201-106). She further testified that all of the forensic scientists at BCI are instructed to use this online reference source for the preliminary identification of all substances analyzed. (T. at 183). She stated that the use of this reference source is part of the protocol and procedures at BCI, and that she has always found it to be reliable with every confirmation test resulting in an exact match. (T. at 185-186).

{¶35} We find Ms. Taylor's testimony established the database used as a reliable authority and that pursuant to Evid.R. 803(18), the trial court acted within its discretion when it allowed same.

{¶36} Appellant's first assignment of error is overruled.

## II.

{¶37} In his second assignment of error, Appellant argues that his conviction was not supported by sufficient evidence. We disagree.

{¶38} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶39} In this assignment of error, Appellant challenges his conviction of tampering with evidence, in violation of R.C. §2921.12(A)(1), which provides:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

\*\*\*

{¶40} The Ohio Supreme Court recently acknowledged that there are three elements to tampering with evidence: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014–Ohio–2139, ¶ 11.

{¶41} Appellant herein argues that because the pills were already hidden inside Appellant's rectum when he was taken into custody by the probation officers for failing to report, he was not aware of any ongoing or likely investigation as it relates to the pills.

{¶42} However, upon review, we find that the State's argument was that the tampering offense was committed in the change-out room in the jail "when Appellant put his hand in and then over his rectal area in order to further conceal the apprehension of the drugs." Appellee's Brief at 8.

{¶43} We find that a review of the record as set forth above supports the jury's finding that the Appellant attempted to further conceal the drugs hidden in his anal cavity while the officers were investigating whether Appellant had conveyed drugs in the county jail.

**{¶44}** Appellant's Second Assignment of Error is overruled.

**{¶45}** For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.


By: Wise, J.

Farmer, P. J., and

Baldwin, J., concur.


JWW/d 0706