[Cite as *State v. Greeno*, 2021-Ohio-1372.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA15 |
| | : | |
| vs. | : | |
| | : | |
| BRIAN A. GREENO, | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Jerry L. McHenry, Pickerington, Ohio, for Appellant.

Judy Wolford, Pickaway County Prosecuting Attorney, Circleville, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. The jury found Brian A. Greeno (Appellant) guilty of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. The trial court ordered Appellant to serve a 36-month prison sentence. On appeal, Appellant raises a single assignment of error contending that his conviction was against the manifest weight of the evidence and was not supported by sufficient

evidence.  However, because we find no merit to Appellant's assignment of error, it is overruled.  Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶2} On December 7, 2018, a Pickaway County Grand Jury returned an indictment that charged Appellant with one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony.  Previously, the State had charged Appellant with drug possession in a separate case that stemmed from an incident that occurred months before the tampering incident.

{¶3} At trial, Pickaway County Corrections Officer Austin Reeves testified that as officers booked Appellant into the Pickaway County Jail, Circleville Police Officer Lance Canterbury advised Reeves that Appellant "may have some type of contraband within his pants.  He said he thought he saw him shove something inside of there before he brought him in, but he wasn't entirely sure."  Reeves began the booking process, which included conducting a pat down search, removing Appellant's handcuffs and having him empty his pockets.  Reeves then frisked Appellant and found nothing.  Reeves testified that "[i]f there is thought to be contraband that was not found during the pat down, we have an inmate change over into a jail issued uniform. That way it's harder for them to convey drugs, contraband into the facility."

{¶4} Officer Reeves further testified that as Appellant stood behind a short wall in the booking cell, Reeves heard "what seemed to be plastic crinkling." He testified that he asked Appellant to hand over whatever he had in his hands, but he refused. He testified that he then said "come on Greeno, whatever you have, give it to me[,]" but that Appellant refused and instead "attempted to eat whatever the contraband was that he had."

{¶5} Officer Reeves testified that after the incident, he told Appellant to sit in the booking area. At that point, Appellant "began to act almost as if he was on some kind of drug, kind of phasing out, just acting not normal * * *." Reeves testified that when Appellant came to the jail, he had been "a little bit irate, a little bit aggressive. By the time I left he was — it was almost as if he was fading in and out of consciousness, seemed very tired, almost fell out of the chair once or twice I do believe." Reeves stated that he could not see what Appellant may have put in his mouth; rather, he only heard crinkling and observed Appellant put his hand near his mouth.

{¶6} Pickaway County Sheriff's Department Jail Administrator Lieutenant Gabe Carpenter testified that when he was outside the cell while Appellant changed to a jail uniform, he heard raised voices. Carpenter entered the room and observed Appellant face away from him, toward the wall. Carpenter testified that although Appellant had removed all of his clothing, he had not yet put on a jail uniform, and

that "[s]hortly thereafter he made movement towards his mouth, and it appeared that

he had swallowed something, was attempting to swallow something."  Carpenter

further testified as follows regarding the incident:

> I tried to make him spit it out, to drop it, to get it out.  He continued.
> He still would not comply with the commands.  Had to take him to
> the bunk to try to get him secured and under control.

{¶7} Once the officers took Appellant to the bunk and positioned him on his

side, they continued to order him to spit out the item.  However, it appears Appellant

still refused.  Carpenter further testified as follows:

> At one point you could hear him trying to, when we ask him
> questions he would try to say something we could just hear
> something was stuck in his throat.  We then stood and continued to
> try to get him to spit the item out.  At one point I told him that he
> was going to, and he again refused.  When he would talk to us, you
> could hear like he had something in his throat.  He still was not
> compliant, until eventually he swallowed that item.

{¶8} Lieutenant Carpenter testified that Appellant became lethargic thereafter

and that "[h]e was having trouble keeping his consciousness and alertness."  As a

result, the jail nurse practitioner was consulted for guidance.  Carpenter testified that

a dose of Narcan was requested and that Appellant was transported to the hospital.

Although the trial transcript indicates that officers transported Appellant to the

hospital, there was no evidence introduced at trial concerning what transpired at the

hospital, or what tests, if any, doctors may have administered to determine

Appellant's condition or to determine what substance he may have possibly ingested.

Our review of the record indicates that Appellant "left around 2:15 and returned around 6:15 that evening."

{¶9} A USB flash drive identified as Exhibit 2 was also utilized at trial and is part of the appellate record. The drive contains video footage of the jail incident from an officer's bodycam. The video does not begin until after Appellant placed the unknown substance into his mouth, but demonstrates Appellant making muffled sounds that could indicate something in his mouth, while being held by multiple officers who attempted to extract whatever substance they believed he had placed into his mouth. The video does not contain footage of Appellant's demeanor after the incident.

{¶10} On February 7, 2019, the jury found Appellant (1) not guilty of possession of drugs, and (2) guilty of tampering with evidence. The trial court sentenced Appellant to serve 36 months in prison. Appellant sets forth a single assignment of error for our review.

ASSIGNMENT OF ERROR

> "THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE. HE WAS DENIED HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW AS GUARANTEED TO HIM BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

Legal Analysis

{¶11} In his sole assignment of error, Appellant contends that his tampering with evidence conviction is against the manifest weight of the evidence and is not supported by sufficient evidence. He further argues that he was denied his right to a fair trial, due process of law, and equal protection as a result. We begin by considering the appropriate standards of review for both sufficiency-of-the-evidence and manifest-weight-of-the-evidence challenges.

Standard of Review

{¶12} This Court recently observed that "sufficiency" and "manifest weight" are distinct legal concepts. *State v. Bradshaw*, 4th Dist. Scioto No. 17CA3803, 2018-Ohio-1105, ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23 (stating that "sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, syllabus (1997). A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *See Thompkins* at 386. When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. Thus, the standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the

prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶13} A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins, supra*, at 390 (Cook, J., concurring). Additionally, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *See State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). Furthermore, a reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *See State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶14} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins, supra*, at 387. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the

evidence and all reasonable inferences, and consider the witness credibility. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 151, citing *Thompkins* at 387. A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, in turn quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). As the Court explained in *Eastley* :

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Eastley, supra*, at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, fn. 3 (1984).

{¶15} Furthermore, appellate courts recognize that issues of evidence weight and witness credibility are matters for the trier of fact to determine, as long as a

rational basis exists in the record for its decision. *See State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24. *Accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight."). Once a reviewing court finishes its weight of the evidence examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins, supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). If the prosecution presents substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense have been established, the judgment of conviction is not against the manifest weight of the evidence. *See State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus (1978), superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). *Accord Eastley, supra,* at ¶ 12, quoting *Thompkins* at 387, in turn quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when " ' "the greater amount of credible evidence" ' " supports it). A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence

weighs heavily against the conviction.' " *Thompkins, supra*, at 387, quoting *Martin, supra,* at 175.  *Accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

Tampering with Evidence

{¶16} R.C. 2921.12 governs the offense of tampering with evidence and provides, in pertinent part, as follows:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

In *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, the Supreme Court of Ohio held that three elements must be satisfied under R.C. 2921.12 in order to establish that the offense of tampering with evidence occurred.  These elements are as follows:

> (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; [and] (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation."

*Straley* at ¶ 11.

{¶17} In *Straley*, after two officers stopped a vehicle for erratic driving, the officers detected an odor of an alcoholic beverage and suspected the driver of being

under the influence. *Straley* at ¶ 2. While the officers were attempting to secure a

ride for the defendant, she announced that she needed to urinate and ran to the corner

of a building to relieve herself. *Id.* at ¶ 3. One of the officers then discovered a

urine-covered cellophane baggie that contained crack cocaine in the area where the

defendant urinated. *Id.* at ¶ 4. Although a jury found Straley guilty of tampering

with evidence, the Second District Court of Appeals reversed the conviction and

concluded that Straley did not impair evidence that related to an ongoing or likely

investigation. *Id.* at ¶ 7. The Supreme Court of Ohio subsequently affirmed the

appellate court's decision, reasoning, in part, as follows:

> There is nothing in the record to suggest that the officers were
> conducting or likely to conduct an investigation into trafficking or
> possession of cocaine when Straley discarded the baggie. The
> baggie of cocaine did not relate to either an ongoing investigation
> of driving under the influence of alcohol or driving without a
> license and had no evidentiary value to a likely investigation of
> public urination, and thus the record does not support a conviction
> for tampering with evidence.

*Straley, supra*, at ¶ 19.

{¶18} As indicated above, the first element for tampering with evidence

requires the State to establish that, at the time of the concealment, the defendant knew

"of an official proceeding or investigation in progress or likely to be instituted."

*State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 2. Further,

"[t]he likelihood of an investigation is measured at the time of the alleged

tampering." *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857,

¶ 110, citing *Straley* at ¶ 19, and *Barry* at ¶ 21. In *Straley*, the Supreme Court of Ohio concluded that at the time Straley discarded the baggie, nothing in the record suggested that the officers were conducting, or were likely to conduct, an investigation into the trafficking or possession of cocaine. *Straley* at ¶ 19.

{¶19} For ease of discussion, we jointly address the remaining prongs of the *Straley* analysis. In order to prove tampering with evidence, the State must also establish: (1) that the defendant altered, destroyed, concealed, or removed the potential evidence; and (2) that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding. *Straley* at syllabus. Thus, "the evidence tampered with must have some relevance to an ongoing or likely investigation" of which the defendant has knowledge. *Straley* at ¶ 16.

{¶20} After a thorough review, we conclude that the case sub judice is factually distinguishable from both *Straley* and *Barry*. As this Court has recently observed, "[t]he analysis in *Straley* * * * demonstrates * * * that a court's inquiry into the evidence supporting a tampering with evidence conviction is fact intensive and each case is unique." *State v. Cook*, 4th Dist. Gallia No. 18CA11, 2019-Ohio-4745, ¶ 21. Even applying the legal holdings of both *Straley* and *Barry*, the jury's finding of guilt with respect to the tampering with evidence charge should be affirmed.

{¶21} Here, the record before us indicates that law enforcement initiated a traffic stop of Appellant after receiving a tip connecting him with drug trafficking activity. While stopped, in addition to being cited for driving under suspension and two other driving infractions, Appellant was arrested and charged with possession of drug paraphernalia due to the fact that hypodermic needles were found on his person during a routine pat down search during the traffic stop. When Appellant was taken to jail, the arresting officer informed the receiving officer at the jail that he had observed Appellant stuff something into his pants. However, when the arresting officer was called to testify during the trial, he was not in the hallway. Further, the officer that received Appellant into the jail could not recall the reason for Appellant's initial stop or arrest and the trial was concluded without the arresting officer's testimony. Thus, no evidence regarding the drug trafficking tip, Appellant's initial stop or search that yielded hypodermic needles was before the jury. Nevertheless, based upon our careful analysis and comparison of several different cases involving tampering with evidence convictions, we conclude that the evidence that *was* before the jury supports Appellant's tampering with evidence conviction.

{¶22} In *State v. Williams*, 8th Dist. Cuyahoga No. 83574, 2004-Ohio-4476, the court addressed an incident that involved a tampering by ingestion charge in which officers believed that they had witnessed a drug transaction and gave chase. *Id*. at ¶ 4. As the officers handcuffed Williams, one officer observed him "chewing

rapidly," trying to swallow something. *Id.* at ¶ 5. After Williams refused to open his mouth, officers pried his mouth open and observed crack cocaine residue. *Id.* Further, officers transported Williams to a hospital to have his stomach pumped. *Id.* at ¶ 7. A urinalysis tested positive for cocaine and marijuana and a gastric lavage recovered white pill fragments. *Id.* at ¶ 10. The court concluded that, under these facts, the State presented sufficient evidence from which a reasonable factfinder could have found the elements of tampering with evidence proven beyond a reasonable doubt. *Williams* at ¶ 43 and 47.

{¶23} In *State v. Price*, 2019-Ohio-1642, 135 N.E.3d 1093, another case involving a tampering by ingestion incident, there was testimony introduced that the defendant was arrested in a parking lot in connection with a drug trafficking investigation. As officers tried to put Price into a cruiser, they observed "his mouth had kind of drooped open and there was a baggie sticking out of his mouth." *Id.* at ¶ 15. Upon witnessing Price's condition at that time, the detective testified that he "immediately knew he ingested heroin." *Id.* The evidence introduced further indicated that paramedics subsequently removed a bag from Price's mouth that contained "a pinkish-tan mixture with saliva." *Id.* at ¶ 64. The *Price* court ultimately concluded that sufficient, circumstantial evidence established that when Price saw the police, he ingested the drugs in the baggie. *Id.* at ¶ 66.

{¶24} In another tampering with evidence case, in which ingestion was not a factor, this Court concluded that the defendant tampered with evidence, but the Ohio Supreme Court disagreed. In *State v. Barry*, 4th Dist. Scioto 13CA3569, 2014-Ohio-4452, reversed in 145 Ohio St.3d 354, 49 N.E.3d 1248, this Court held that a defendant, who admitted that she concealed heroin in her vagina in order to conceal the drug from law enforcement authorities, had constructive knowledge of an impending investigation, or at least knowledge that an investigation would likely ensue, in view of the obvious, inherent and unmistakable evidence of a crime of possessing the controlled substance. The theory to support this view is that a person actively engaged in the commission of a drug offense should have constructive notice that an investigation will likely ensue. *Barry*, 2014-Ohio- 4452 at ¶ 10. However, the Ohio Supreme Court determined that the law will not impute constructive knowledge of an impending investigation as an element of the tampering with evidence offense based solely on the commission of an offense. *Barry*, 145 Ohio St.3d at paragraph one of the syllabus. The Court determined that, consistent with the required strict construction of criminal statutes, including the elements of R.C. 2921.12(A)(1), a tampering with evidence violation requires the State to establish that the defendant had knowledge of a proceeding or investigation that is in progress, or likely to be instituted, and then concealed or destroyed an object with the purpose to

impair its availability as evidence in that proceeding or investigation.  *See also State v. Crocker*, 4th Dist. Scioto 14CA3640.

{¶25} After careful case comparison and consideration of the foregoing, we conclude this case is factually more akin to *State v. Bradshaw*, 4th Dist. Scioto No. 17CA3803, 2018-Ohio-1105, than it is either *Barry* or *Straley* and thus, it demands a different outcome.  In *Bradshaw*, this Court upheld a tampering with evidence conviction where the defendant:  (1) was arrested on a parole violation; (2) was informed he was going to jail; (3) was asked whether he had any contraband on him and denied that he did; (4) was patted down and warned regarding taking contraband into the jail; and (5) the defendant then threw an item in a cigarette wrapper into the trash on the way into the jail.  *State v. Bradshaw* at ¶ 4-5.  Like the underlying arrest here, the nature of the parole violation in *Bradshaw* was not in evidence.  *Id.*  When an officer accompanying Bradshaw retrieved the item out of the trash, Bradshaw admitted it was "some dope," which turned out to be heroin.  *Id.* at ¶ 9.  This Court affirmed a tampering with evidence conviction based upon those facts despite Bradshaw's arguments that at the time he allegedly disposed of the heroin the only investigation concerned his alleged parole violation and that the State failed to present any evidence that the alleged violation involved drug-related offenses.  *Id.* at ¶ 18.

{¶26} In upholding Bradshaw's conviction we noted the State's argument that the parole violation investigation "did not end at the jail-house doors[,]" and "that the officers warned appellant about the consequences of carrying contraband into the jail, and that warning gave appellant knowledge that an investigation into whether he was carrying contraband was likely." *Id.* at ¶ 11. Here, Appellant was not arrested on a parole violation, but he had nevertheless been arrested and was being booked into jail. Further, as in *Bradshaw*, there was testimony at trial that Appellant was warned about bringing contraband into the jail and that he denied having anything. There was also testimony that he was patted down and subjected to the further scrutiny of having to change out of his clothing and into a jail-issued uniform, which was explained is typically done when law enforcement suspects that someone has contraband that was not found during a pat down.

{¶27} It was during this phase of his booking that Appellant was observed to have something in his hand that was making a crinkling sound, which he then put into his mouth and eventually swallowed, despite being repeatedly ordered to hand the item over, being ordered to spit the item out, all the while being told he would be charged with tampering. In upholding Bradshaw's conviction we noted that the first element of the offense of tampering was satisfied because Bradshaw knew he was under investigation for violating parole "and that he would be searched for contraband more thoroughly once he arrived at the jail." *Id.* at ¶ 53. In reaching our

holding, we reasoned that Bradshaw's "attempt to dispose of the evidence was a 'reaction to a likely investigation of a * * * criminal act,' and not a preemptive measure to avoid detection." *Bradshaw* at ¶ 50, quoting *State v. Shaw*, 8th Dist. Cuyahoga No. 105111, 2017-Ohio-7404, ¶ 24. We believe the first element is likewise satisfied in the case sub judice, where Appellant knew he was going to jail, was warned about bringing contraband into the jail, knew he would be searched more thoroughly, and took action to destroy evidence of a crime.

{¶28} As for the second element, in *Bradshaw* we concluded that Bradshaw's act of disposing of heroin in a trash can on the way into jail constituted concealment or removal for purposes of the tampering statute. *Id.* at ¶ 54. Likewise, we conclude Appellant's act of putting the item at issue in his mouth after being commanded to hand it over, and then taking the further step of swallowing it after being commanded to spit it out, satisfied the second element of the offense of tampering. *See also State v. Cheesman*, 5th Dist. Fairfield No. 15CA59, 2016-Ohio-5040, ¶ 9 (upholding a conviction for tampering with evidence where the defendant was put in the "change-out room" while being booked into jail and reached his hand toward his rectum in an attempt to further conceal contraband he already had in his rectum). In *Cheeseman*, the appellate court "agreed with the State that the defendant committed the tampering offense not before the officers placed him in custody, but instead, he committed the tampering offense 'in the change-out room in the jail "when [he] put his hand in and

then over his rectal area in order to further conceal the apprehension of drugs." ' "
*Bradshaw* at ¶ 33, quoting *Cheesman* at ¶ 42, quoting the State's argument on appeal.
Here, we conclude there is ample evidence in the record that Appellant was observed
with something in his hand, which he put into his mouth, and then with great
difficulty, swallowed.

{¶29} Finally, we found the third element was satisfied in *Bradshaw* because
the defendant "knew he was under investigation for violating parole, knew that
conveying drugs into the jail constituted a crime, and could reasonably expect to be
more thoroughly searched for contraband at the jail." *Bradshaw* at ¶ 61. We further
reasoned that "by disposing of the evidence immediately before entering the jail-
house doors, appellant impaired the availability of that evidence for use in an ongoing
parole-violation investigation or in a likely investigation into whether he had
conveyed illegal drugs into a detention facility." *Id.* The same reasoning should
apply here to Appellant who was under arrest and being booked into the jail, had been
warned about conveying contraband into the jail, and knew he would be more
thoroughly searched, prior to putting the contraband into his mouth and then
swallowing it.

{¶30} In *Bradshaw*, the contraband was recovered from the trash can and was
ultimately able to be tested. We noted, however, that "even when a defendant's
attempted concealment ultimately proves unsuccessful, * * * this failure 'has no

effect on a sufficiency-of-the-evidence analysis.' " *Id.* at ¶ 62. Here, the opposite happened. Appellant was so successful in his actions of tampering with evidence that the item he had in his pants, and then in his hand, and then in his mouth, was lost when he swallowed it. Although there are cases that reference defendants having the contents of their stomach pumped, and although Appellant argues the State never introduced medical records regarding what happened once he arrived at the hospital, it seems an onerous burden to require such action by the State in order to be able to establish that tampering with evidence took place. Further, recovery of the evidence is not necessary to sustain a tampering with evidence conviction. *State v. Caute*, 8th Dist. Cuyahoga No. 92169, 2009-Ohio-5222, ¶ 74.

{¶31} Appellant contends that no one knows what "thing" he allegedly ingested, or if the "thing" that caused the "crinkly" sound was evidence of some value to an investigation. Thus, he argues the jury had to infer that the "thing" that caused the "crinkly" sound was actually evidence of some value to an investigation and, moreover, the jury had to further infer that Appellant sought to impair the value or the availability of the "thing" as evidence. Therefore, Appellant essentially contends that the jury engaged in impermissible inference stacking in reaching its decision.

{¶32} "A trier of fact may not draw '[a]n inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other

facts[.]' " *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 N.E.2d 298 (1999), quoting

*Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820, paragraph

one of the syllabus (1955). "When an inference, which forms the basis of a

conviction, is drawn solely from another inference and that inference is not supported

by any additional facts or inferences drawn from other established facts, the

conviction is improper." *State v. Armstrong*, 11th Dist. Portage No. 2015-P-0075,

2016-Ohio-7841, ¶ 23, citing *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001,

2014-Ohio-4304, ¶ 23, *see also State v. Maynard*, 10th Dist. Franklin No. 11AP-697,

2012-Ohio-2946, ¶ 27.

> The rule against inference-stacking essentially forbids the drawing
> of an inference from evidence which is too uncertain or speculative
> or which raises merely a possibility or conjecture. While
> reasonable inferences may be drawn from the facts and conditions
> established, they cannot be drawn from facts or conditions merely
> assumed.

*Armstrong* at ¶ 23. *See generally Ray v. Wal–Mart Stores, Inc.,* 2013-Ohio-2684, 993

N.E.2d 808, ¶ 35 (4th Dist.) (discussing improper inference stacking).

{¶33} "Though widely denounced by both courts and legal commentators, the

rule prohibiting the stacking of one inference upon another is still recognized in

Ohio." *Donaldson v. N. Trading Co.*, 82 Ohio App.3d 476, 481 (10th Dist.1992),

citing *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees*, 28 Ohio St.3d 13, 502

N.E.2d 204 (1986), *see also State ex rel. Verhovec v. Marietta*, 4th Dist. Washington

Nos. 11CA29, 12CA52, 12CA53, 13CA1, 13CA2, 2013-Ohio-5414, ¶ 59. However,

"the rule has very limited application. It prohibits only the drawing of one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences drawn from other facts." *Id.*, citing *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820, paragraph one of the syllabus (1955). As the Court in *Motorists* warned: "the rule forbidding the stacking of an inference upon an inference is disfavored by scholars and many courts. If such a rule were uniformly enforced, ' * * * hardly a single trial could be adequately prosecuted.' " *Motorists Mut. Ins. Co.* at 207, quoting 1A Wigmore, Evidence (Tillers Rev.1983) 1106, 1111, Section 41; *United States v. Eustace*, 423 F.2d 569, 571(2nd Cir., 1970); *see also Verhovec* at ¶ 60.

{¶34} "An inference which is based solely and entirely upon another inference and which is unsupported by any additional fact or another inference from other facts is an inference upon an inference and is universally condemned." *Hurt* at ¶ 2 of the syllabus. However, there are two instances when the rule against inference stacking does not apply. The first is when "[a]n inference which is based in part upon another inference and in part upon factual support is called a parallel inference and is universally approved provided it is a reasonable conclusion for the jury to deduce." *Id.* at ¶ 3 of the syllabus. The second is when multiple inferences arise separately from the same set of facts. *McDougall v. Glenn Cartage Co.*, 169 Ohio St. 522, 160 N.E.2d 266, paragraph two of the syllabus (1959).

{¶35} At trial the State presented two witnesses, Deputy Reeves and Lieutenant Carpenter, both of whom were at the jail when Appellant arrived after his arrest. Reeves testified that he heard a "crinkling" sound as Appellant attempted to swallow something but he did not know what he swallowed. Carpenter testified that he did not see any contraband that Appellant may have swallowed. Following the swallowing, however, both officers stated that Appellant's demeanor changed and he appeared to be under the influence. Carpenter testified that upon noting a change in Appellant's demeanor, he requested a dose of Narcan and a nurse practitioner was summoned to monitor him. Appellant was thereafter transported to the hospital.

{¶36} Based upon the information contained in the record before us, we cannot conclude that the jury had to engage in impermissible inference stacking in order to reach a guilty verdict. There is evidence indicating Appellant swallowed some type of contraband which likely was a controlled substance in light of the near immediate change in his demeanor. As set forth above, Appellant came into the jail irate and aggressive, but after the swallowing incident he became lethargic and almost fell out of a chair twice. This change in his demeanor or mental status actually necessitated medical attention requiring him to be transported to the hospital. Thus, there was some circumstantial evidence that was introduced indicating that the item Appellant swallowed was a controlled substance. Further, circumstantial evidence has equal probative value to direct evidence. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d

492, paragraph one of the syllabus (1991). As such, it does not appear the jury had to stack inferences, but rather could have inferred that the item ingested was a controlled substance based upon the factual information in the record related to Appellant's status change after ingesting the unknown item. As explained in *Motorists*:

> Where a jury bases its verdict partly on a reasonable inference drawn from facts in evidence, and partly on an inference drawn both from those same facts and from *common human experience*, the verdict is not the result of the impermissible stacking of an inference upon an inference.

(Emphasis added.) 28 Ohio St.3d at 14.

{¶37} Here, we cannot conclude that the second inference (that the item ingested was a controlled substance) was based solely upon the first inference (that Appellant actually ingested something) Rather, the jury could have based the second inference on "common human experience" that a person who, contrary to an order by a law enforcement officer to spit out an item, instead ingests it and subsequently becomes lethargic and has difficulty staying alert has ingested "evidence," i.e. a controlled substance. *In re Lucas*, 33 Cal. 4th 682, 696, 94 P.3d 477, 485 (2004) ("[I]llicit drugs and their effects have become a matter of common knowledge or experience."). *See also Wilkerson v. State*, 736 S.W.2d 656, 664 (Tex. Crim. App. 1987) ("[I]t is common knowledge that most controlled substances have some effect upon human beings when taken * * *.").

{¶38} As such, based upon the foregoing reasons, we cannot conclude that Appellant's conviction for tampering with evidence was against the manifest weight of the evidence or was not supported by sufficient evidence.  Thus, we find no merit to Appellant's sole assignment of error.  Accordingly, it is overruled and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

Abele, J, dissenting:

{¶39} I respectfully dissent.  After my review of the evidence adduced at trial, I do not believe the prosecution presented sufficient evidence to reasonably support a finding of guilty beyond a reasonable doubt.

{¶40} At trial appellee presented two witnesses, Deputy Reeves and Lieutenant Carpenter, both of whom were at the jail when appellant arrived.  Reeves heard a "crinkling" sound as appellant appeared to attempt to swallow something, but he did not know what appellant may have swallowed.  Carpenter did not see any contraband. Following the alleged swallowing, both officers testified that appellant appeared to be under the influence.  Carpenter requested Narcan, but the record does not reflect if anyone administered Narcan, or what effect, if any, it may have had on appellant's demeanor or condition.  Carpenter's testimony also refers to a nurse practitioner summoned to monitor appellant after he allegedly swallowed the unknown item, but the nurse practitioner did not testify.  Additionally, the transcript indicates that officers transported appellant to the hospital.  However, I find no testimony, records or other evidence concerning what transpired at the hospital, or what tests, if any, doctors or medical staff may have administered to determine the source of appellant's condition, or to determine what substance, if any, that appellant may have possibly ingested.  Apparently, concerning appellant's transport to and from the hospital, he "left around 2:15 and returned around 6:15 that evening."

{¶41} Appellant asserts that no one knows what "thing" appellant allegedly ingested, or if the "thing" that caused the "crinkly" sound was evidence of some value to an investigation. Thus, appellant argues, the jury had to first infer that the "thing" that caused the "crinkly" sound was actually evidence of some value to an investigation, then the jury had to further infer that appellant sought to impair the value or the availability of the "thing" as evidence. Appellee, however, urges this court to uphold the jury's determination.

{¶42} I agree that appellate courts should generally afford great deference to a trier of fact's determination. Nevertheless, after my review of the record, I do not believe that the prosecution presented sufficient evidence to prove that appellant tampered with evidence in violation of R.C. 2921.12. The statute provides that no person shall destroy or conceal anything with purpose to impair its availability as evidence in an investigation. With no information or testimony about the particular nature of the "evidence" that the appellant allegedly tampered with, along with the absence of any expert testimony regarding appellant's condition, the absence of any medical tests to indicate what substance, if any, appellant may have ingested, and with eye-witnesses unable to identify what substance, if any, appellant may have ingested, I believe the evidence adduced at trial is insufficient to establish beyond a reasonable doubt that appellant tampered with evidence.

{¶43} The principal opinion cites several tampering with evidence cases to support its view. I, however, do not believe that this case is sufficiently similar to those decisions. In *State v. Williams*, 8th Dist. Cuyahoga No. 83574, 2004-Ohio-4476, the handcuffed defendant attempted to chew and swallow crack cocaine. The officers pried open the defendant's mouth, observed crack cocaine residue, and had the defendant submit to chemical tests. Subsequently, the defendant's urinalysis tested positive for cocaine and marijuana, and his stomach pump yielded pill fragments. In the case sub judice, however, I find no testimony about drug residue in appellant's mouth, no drug test results and no gastric lavage results.

{¶44} In *State v. Price*, 2019-Ohio-1642, 135 N.E.3d 1093, the defendant observed police and ingested a small baggie of drugs. Police observed the drugs in the defendant's mouth and paramedics observed and removed a "pinkish-tan mixture with saliva." In the case at bar, however, officers did not recover any evidence at the scene or at the hospital.

{¶45} I believe that the case at bar is more similar to *State v. Caute*, 8th Dist. Cuyahoga No. 92169, 2009-Ohio-5222. As Caute approached the passenger side of a detective's car with something small in his hand, the detective held out a $20 bill. As Caute leaned into the window, police surrounded him. Caute then "tossed something on the ground behind him, and put his hands in the air." *Caute* at ¶ 4. Although

police searched the surrounding area, they did not recover any drugs.  With respect to

his tampering with evidence conviction, the court held:

> [W]e find that the state did not present sufficient evidence to show
> that defendant tampered with evidence in violation of R.C. 2921.12.
> There was no evidence that anyone saw any type of drugs that day,
> and no drugs were recovered from the scene.  Testimony that
> defendant had an unidentified object in his hand that he tossed to
> the ground is not sufficient to show that he altered, destroyed,
> concealed, or removed any 'thing, with purpose to impair its value
> or availability as evidence in [a] proceeding or investigation * * *.'
> In other words, in looking at the evidence in a light most favorable
> to the state, nothing in the record links the unidentified object that
> defendant threw to the ground to the state's accusation that he
> offered to sell [the defective] crack cocaine. * * *
>
> We do not mean to say that the recovery of the evidence in question
> is necessary to sustain a tampering with evidence conviction.
> Clearly, if the evidence is destroyed, recovery is impossible.
> However, the state must show, inter alia, that the evidence existed,
> and it must identify that evidence as the same "thing" that the
> defendant tampered with.  *See, e.g. State v. Williams*, Cuyahoga
> App. No. 83574, 2004-Ohio-4476 (holding that sufficient evidence
> was presented to prove the elements of tampering with evidence
> when officers testified that they 'observed Williams put something
> in his mouth before he started running'; 'they observed Williams
> chewing and trying to swallow something,' after they caught him;
> 'when they were able to get Williams' mouth open, they observed
> crack cocaine particles' inside; and drug fragments were recovered
> from Williams' stomach after it was pumped with gastric lavage.)

*Caute* at ¶ 74-74.

Thus, even if evidence is lost or destroyed, the prosecution must show that the

evidence existed, and that this evidence is the same "thing" that the appellant

tampered with.

{¶46} Based upon the foregoing reasons, I believe that the evidence adduced at trial is insufficient to establish appellant's guilt beyond a reasonable doubt. While I do not doubt that, in all likelihood, appellant ingested something, and that something was, in all likelihood, a drug of some sort, I do not believe that the evidence adduced at trial satisfied the beyond a reasonable doubt standard. This standard is stringent, sets a very high bar for proof of a criminal conviction, and applies to each and every element of a crime. In fact, the beyond a reasonable doubt standard is the highest standard of proof known to the law.

{¶47} At this juncture, I also wish to emphasize that I am certainly sympathetic with the law enforcement officers involved in this matter. During the booking process, the officers had to physically subdue the recalcitrant appellant. Obviously, appellant's actions unnecessarily endangered the officers' safety and this is unacceptable. Quite possibly, other criminal statutes may have applied to this uncooperative and combative defendant (see, e.g. R.C. 2921.31). Nevertheless, I believe the evidence adduced at trial does not sufficiently support appellant's conviction for tampering with evidence.

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Wilkin, J., Concurs in Judgment and Opinion.

Abele, J., Dissents with Opinion.



For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**