[Cite as *State v. Hale*, 2023-Ohio-3894.]

[Please see vacated opinion at 2023-Ohio-3626.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff-Appellee,               :

                                 No. 112163

     v.                                :

DELANO HALE,                            :

     Defendant-Appellant.              :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** October 26, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-04-454857-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah E. Hutnik, Assistant Prosecuting Attorney, *for appellee*.

Law Office of Timothy Farrell Sweeney and Timothy F. Sweeney, *for appellant*.

ON RECONSIDERATION[1]

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Delano Hale ("Hale"), appeals from the trial court's denial of his "motion for leave to file a delayed motion for new trial, with memorandum in support and all exhibits." He raises the following assignments of error for review:

> 1. The trial court abused its discretion in denying appellant leave to file a delayed motion for new trial.
>
> 2. The trial court abused its discretion in failing to address appellant's petition for postconviction relief.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. Procedural and Factual History

### A. Hale's Conviction and Direct Appeal

{¶ 3} On July 28, 2004, Hale was indicted for aggravated murder, with felony murder death specifications, aggravated robbery, tampering with evidence, and having a weapon while under disability, all in connection with the death of Douglas Green ("Green"). The relevant facts supporting the indictment are as follows:

> In 2003, Hale was released from prison after serving 12 years of a sentence for aggravated robbery and carrying a concealed weapon. At first, he lived with his father, but left in February 2004. That same

---

[1] The original decision in this appeal, *State v. Hale*, 8th Dist. Cuyahoga No. 112163, 2023-Ohio-3626, released on October 5, 2023, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

month, he obtained a telemarketing job with a base pay of $ 7.64 per hour.  On March 9, 2004, Hale told his sister Lashayla that he had a gun.

By June 2004, Hale was in financial difficulty.  His bank account had a negative balance during all of June 2004.  On June 8, he moved into Room 260 of the Lake Erie Lodge, a motel in Euclid.  He initially rented the room for a week.  He renewed his stay for another week on June 15, renewed for a single night on June 22, and checked out on June 23.

On June 23, 2004, an employee of the lodge found a human corpse wrapped in plastic garbage bags in Room 231, a vacant room being used for storage.  He notified the management, who summoned the police.  The body was identified as that of Douglas Green, a local voice teacher, professional singer, and music producer.

An autopsy disclosed that Green had been shot four times in the right side of the head.  Two shots went into Green's right ear, one entered his skull directly behind the ear, and one entered about two and one-half inches behind the ear.  Three of the four shots entered Green's brain.  Any one of these three wounds would have immediately stopped any voluntary movement on Green's part.  Three of the wounds were contact wounds, meaning that the shots were fired from no more than an inch away.  Gunshot residue was found on Green's right hand, but not his left, an indication that Green's right hand was in close proximity to the gun when it was fired.

Green's bank statement shows that at 12:07 p.m. on June 22, 2004, a person using Green's Visa card made a $ 55.15 purchase at a Giant Eagle store in Willoughby Hills.  Giant Eagle records show that the purchaser bought garbage bags, cleaning supplies, beer, and cigarettes in that transaction. Green did not smoke or drink beer.  The purchaser also used a Giant Eagle discount card registered to Hale's sister and deceased mother.

Hale's friend James Hull saw Hale driving a[n] Explorer SUV on two occasions after Green's murder, including on June 23, 2004, when Hull helped Hale move out of the lodge.  Hull later identified photographs of Green's SUV as the one Hale had been driving.

On June 28, 2004, at 2:30 p.m., Detective Sergeant Robert Pestak of the Euclid police found Hale inside Green's Ford Explorer SUV, parked near Hale's workplace in Cleveland.  Pestak, supported by Cleveland police units, arrested Hale.

When told that he was being arrested for Green's murder, Hale said, "I didn't kill anybody." Sergeant Pestak administered *Miranda* warnings to Hale. While being led to a cruiser, Hale again said, "I didn't kill anybody."

Hale was taken to the Euclid police station and placed in a cell. After approximately five hours, Hale was removed from the cell and brought to the detective bureau. There, Detective Sergeant James Baird [("Det. Baird")] completed a personal-information form on Hale and presented it to Hale for his signature. Hale signed the form using his left hand, but Baird noted that Hale had difficulty writing with that hand.

Baird then administered *Miranda* warnings to Hale. Hale signed a *Miranda* waiver form, and this time, Hale used his right hand. Baird proceeded to interrogate Hale. During the interrogation, Baird told Hale that Green "was possibly bisexual" and that "if this was a case of self-defense, then that would be understandable if he felt that Mr. Green had attacked him."

Hale wrote out and signed a four-page statement. In his statement, Hale claimed that he had met Green in May 2004 when Green, identifying himself as a record producer, asked Hale whether he had considered singing professionally and gave Hale his cell-phone number. According to Hale, he later called Green, and Green agreed to go to Hale's motel room to hear him sing.

According to Hale, they had arranged to meet at the Underground Railroad, a bar near the lodge. Hale claimed that he and Green had met at the Underground Railroad on Monday, June 21, 2004. (However, according to the owner of the Underground Railroad, that establishment was closed on Mondays.) They then went to Hale's room. According to Hale, Green had a small gun in his shoulder bag and displayed it to Hale as they entered the room.

Hale claimed that he sang for Green, then went to the bathroom. Hale claimed that when he returned, he found Green lying on the bed, nude. Hale told Green to leave. According to Hale, Green grabbed Hale's wrists and "laid his head on [Hale's] crotch" while making "slurping" noises.

Hale claimed that he then freed his right hand, reached into Green's bag, pulled out the gun, held it to Green's head, and cocked it.

According to Hale, Green said, "It isn't loaded, so why don't you give me some of that dick."

Hale fired. Green "reeled back," but still gripped Hale's left wrist, according to Hale. Hale cocked the gun and fired again. He then backed away from Green, took some bullets from Green's bag, and reloaded. According to Hale, Green then tried to stand up. Hale fired "once or twice" more.

According to Hale, he considered calling an ambulance or the police, but decided not to after he "thought about * * * [his] record" and "the life [he] was attempting to build." Instead, he disposed of the gun and Green's belongings. Then he went out to buy cleaning supplies to clean up Green's blood, using Green's credit card because Hale's "funds were low." The next day, he wrapped Green's body in garbage bags, also purchased with Green's credit card, and dragged the body to a storage room.

*State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 4-17 ("*Hale I*").

**{¶ 4}** "At trial, the defense claimed that Hale's killing of Green constituted lawful self-defense because Green had attempted to rape Hale." *Id.* at ¶ 36. Ultimately, the jury rejected Hale's defense and found him guilty of all counts and specifications. On July 18, 2005, the trial court adopted the jury's unanimous recommendation and sentenced Hale to death on the aggravated-murder offense, and an aggregate 13-year prison term on the remaining convictions.

**{¶ 5}** On July 15, 2008, Hale's conviction and sentence were affirmed by the Ohio Supreme Court. *Hale I.*

### B. Postconviction Proceedings in State Court

**{¶ 6}** While his direct appeal was pending before the Ohio Supreme Court, Hale filed a petition for postconviction relief, raising 19 grounds for relief. Following

a substantial delay, the trial court dismissed Hale's petition on September 24, 2015. This court affirmed the trial court's judgement in *State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837, ¶ 49 ("*Hale II*").

{¶ 7} On January 11, 2017, Hale filed a "combined motion for leave to file a motion for new mitigation trial pursuant to criminal rule 33 and R.C. 2953.21." Hale argued that the Ohio death penalty scheme was unconstitutional. On September 10, 2018, the trial court denied Hale's combined motion. This court affirmed the trial court's judgment in *State v. Hale*, 8th Dist. Cuyahoga No. 107782, 2019-Ohio-1890 ("*Hale III*").

### C. Postconviction Proceedings in Federal Court

{¶ 8} In 2008, and again in 2017, Hale filed petitions for writs of certiorari with the U.S. Supreme Court, which were denied. *Hale v. Ohio*, 556 U.S. 1168, 129 S.Ct. 1906, 173 L.Ed.2d 106 (2009); *Hale v. Ohio*, 138 S.Ct. 1269, 200 L.Ed.2d 424 (2018).

{¶ 9} On October 10, 2018, Hale filed a petition for a writ of habeas corpus in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. 2254. In relevant part, Hale argued that the trial court's jury-selection procedures, which excluded persons convicted of felonies from the jury pool, violated his Sixth Amendment right to a jury from a fair cross-section of his community and his Fourteenth Amendment rights to due process and equal protection. Hale also raised various ineffective assistance of counsel claims based on defense counsel's alleged failure to (1) hire experts in forensic pathology, bloodstain pattern analysis, forensic

psychiatry, sexual abuse, and trauma; (2) discover Green's alleged suicidal condition before his murder; and (3) obtain parole and prison records. Finally, Hale claimed that the prosecution failed to disclose material exculpatory and impeachment evidence, violating his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

{¶ 10} The motion was denied on March 31, 2021. *Hale v. Shoop*, N.D. Ohio 1:18-cv-504, 2021 U.S. Dist. LEXIS 61953 (Mar. 31, 2021). His request for reconsideration was denied on March 1, 2022. *Hale v. Shoop*, N.D. Ohio 1:18-cv-504, 2022 U.S. Dist. LEXIS 36135 (Mar. 1, 2022).

### D. Hale's Latest Motion for Leave to File a Delayed Motion for New Trial

{¶ 11} On August 1, 2022, Hale filed a motion for leave to file a delayed motion for new trial pursuant to Crim.R. 33(B) based on newly discovered evidence. Hale argued that "due to improper suppression by the state, as well as facts reasonably unknown to him, [he] was 'unavoidably prevented from discovering the evidence' upon which he relies until well after 120 days had elapsed." He contends that the evidence attached to his motion for leave demonstrates that the state unconstitutionally (1) withheld exculpatory or impeaching evidence at the time of trial; (2) relied on "junk science" in securing his convictions and death sentence; and (3) systematically excluded people with felony convictions, "which disproportionally impacted black men, from petit and grand juries, including his own."

{¶ 12} Within the motion for leave, Hale identified a collection of documents that were allegedly not turned over to defense counsel prior to trial. These documents included (1) Hale's Ohio Adult Parole Authority records (Exhibit A-1); (2) a supplemental police report completed by Det. Baird on June 24, 2004, (Exhibit A-2); (3) handwritten notes taken by an unknown member of law enforcement regarding a voicemail the victim left with his daughter (Exhibit A-16); (4) notes taken by an unknown member of law enforcement regarding a phone interview with the victim's friend, Ricardo Cuffari ("Cuffari") (Exhibit A-3); and (5) notes taken by Det. Michael Grida of the Euclid Police Department regarding a statement made by a friend of Green, acknowledging that he had "known about Green's sexuality for a long time." (Exhibit A-17.) Hale's motion also relied on new expert reports authored by forensic pathologist, Dr. James Filkins ("Dr. Filkins") (Exhibit A-13) and bloodstain spatter analysis expert, T. Paulette Sutton ("Sutton") (Exhibit A-14). Finally, Hale relied on an advisory opinion issued by the Ohio Attorney General in 2006, and the testimony adduced during an unrelated trial in 2011, indicating that the Cuyahoga County Court of Common Pleas was "systematically excluding otherwise eligible jurors with felony convictions from its jury venire." (Exhibits A-4, A-5, A-6, A-8.)

{¶ 13} On August 29, 2022, the state filed a brief in opposition, arguing Hale failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering the evidence supporting his motion for leave. The state maintained that Hale could not demonstrate that he "(1) had no knowledge of the

existence of the evidence or grounds supporting the motion for a new trial, and (2) was unavoidably prevented, while exercising reasonable diligence, from learning of these grounds within the statutorily prescribed time [by Crim.R. 33]."

{¶ 14} On October 25, 2022, the trial court summarily denied Hale's motion for leave without a hearing.

{¶ 15} Hale now appeals from the trial court's judgment.

## II. Law and Analysis

## A. Leave to File Motion for New Trial

{¶ 16} In the first assignment of error, Hale argues the trial court abused its discretion by denying his motion for leave to file a motion for new trial without a hearing. Hale contends that leave should have been granted because the exhibits attached to his motion established that he was unavoidably prevented from discovering the evidence supporting his proposed motion for new trial. He explains his position as follows:

> Hale did not know the basis of his new trial motion existed at the time of his trial, nor in the 120-day period following trial. First, Hale was unavoidably prevented from discovering the favorable police and parole records since the state suppressed them. Second, the trial counsel's failure to adequately investigate explains and excuses Hale's failure to discover the forensic evidence demonstrating his capital convictions and sentence are based on fundamentally flawed and incomplete testimony. Third, as the federal court concluded, "Hale was not at fault for failing to develop sooner his fair-cross-section and equal-protection claims relating to Cuyahoga County's jury-selection process (Doc. Nos. 13-8 - 13-15). The factual predicate of these claims was not apparent or readily available to Hale or his counsel at trial or before his post-conviction proceedings."

{¶ 17} We review the denial of a motion for leave to file a delayed motion for new trial for an abuse of discretion. *State v. Hill*, 8th Dist. Cuyahoga No. 108250, 2020-Ohio-102, ¶ 13, citing *State v. Dues*, 8th Dist. Cuyahoga No. 105388, 2017-Ohio-6983, *discretionary appeal not allowed*, 152 Ohio St.3d 1411, 2018-Ohio-723, 92 N.E.3d 881. This includes any decision granting or denying an evidentiary hearing. *State v. Johnson*, 8th Dist. Cuyahoga No. 109084, 2020-Ohio-3371, ¶ 14, citing *State v. Bonnell*, 8th Dist. Cuyahoga No. 108209, 2019-Ohio-5342, ¶ 37, citing *State v. Hill*, 8th Dist. Cuyahoga No. 102083, 2015-Ohio-1652, ¶ 16. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 18} Crim.R. 33 provides that a new trial may be granted on motion of the defendant where new evidence materially affects the defendant's substantial rights and satisfies the following:

> When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

Crim.R. 33(A)(6).

**{¶ 19}** Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed within 120 days after a verdict is rendered. A defendant who fails to file a motion for new trial within the prescribed timeframe must seek leave from the trial court to file a delayed motion for new trial. *Hale*, 8th Dist. Cuyahoga No. 107782, 2019-Ohio-1890, at ¶ 9, citing *State v. Bryan*, 8th Dist. Cuyahoga No. 105774, 2018-Ohio-1190.

**{¶ 20}** To obtain leave, Crim.R. 33(B) requires the defendant to demonstrate by clear and convincing proof that he or she was unavoidably prevented from filing the motion for a new trial. Significantly, "[w]hen a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 30, citing *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 41, citing *State v. Brown*, 8th Dist. Cuyahoga No. 95253, 2011-Ohio-1080, ¶ 14. "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Id.*

> [A] party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion * * * and could not have learned of the existence of that ground within the time prescribed for filing the motion * * * in the exercise of reasonable diligence.

*State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 21} In turn, "clear and convincing proof" is defined as "'that measure or degree of proof [that] is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" * * * and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Gray*, 8th Dist. Cuyahoga No. 107394, 2019-Ohio-1638, ¶ 12, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 22} In *Bethel*, the Ohio Supreme Court examined the scope of the "unavoidably prevented" requirement in Crim.R. 33(B) to determine whether the rule imposes a reasonable time requirement. The *Bethel* Court noted that, historically, appellate courts have concluded that a defendant must file a motion for leave within a reasonable period of time after discovering the new evidence. *Id.* at ¶ 53. The court, however, applied "general principles of statutory construction" and determined that the rules do not authorize or support the "creation of a reasonable-time filing requirement" under Crim.R. 33(B). *Id.* at ¶ 54-55. *Bethel* clarified that Crim.R. 33(B) "does not establish a time frame in which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence." *Id.* at ¶ 55.

{¶ 23} In this case, Hale was convicted in 2005 and he filed his motion for leave in August 2022, well beyond Crim.R. 33(B)'s 120-day time limit. Thus, to obtain leave to file a motion for new trial, Hale was required to establish, by clear and convincing evidence, that he was "'unavoidably prevented from the discovery of the evidence upon which he must rely.'" *Bethel* at ¶ 53, quoting Crim.R. 33(B).

**{¶ 24}** With the foregoing standards in mind, we separately address the evidentiary materials supporting Hale's motion for leave.

### 1. Hale's Parole Records

**{¶ 25}** In his motion for leave, Hale argued that he was unavoidably prevented from discovering certain parole records due to the state's suppression of favorable evidence. He alleged that the evidence was not discovered until October 2, 2018, despite his numerous requests for the state to produce all relevant documents during the discovery process in 2004.

**{¶ 26}** In this case, the documents attached to Hale's motion for leave demonstrate that on November 8, 2004, Det. Grida sought a subpoena requiring the Ohio Adult Parole Authority to produce Hale's parole records. The subpoena requested "any and all information, as to [Hale's] reporting, living arrangements, and employment as well as any other information within the persons file." Collectively, the parole records sent to the police department establish that (1) Hale had been in compliance with the terms of his parole since his release from prison on unrelated charges in December 2003, (2) Hale reported to his parole officer that he was living at the Lake Erie Lodge, Room 260, for a period of time before Green's murder, and (3) Hale received positive reviews during his imprisonment. Hale asserts that the parole records were exculpatory and could have been used to impeach the state's evidence that he "selected [the] hotel room as part of a scheme to execute and rob Green." Hale further contends that the parole records were

relevant to the highly contested issue of mitigation during the sentencing phase of his trial.

{¶ 27} After careful review of the exhibits attached to Hale's motion for leave, we are unable to conclude by clear and convincing evidence that Hale was unavoidably prevented from discovering the parole records stemming from his prior, unrelated convictions. Without delving into the relevance of the parole records, we find Hale had independent knowledge of the information contained within the documents and, therefore, could have discovered and produced the records at trial had reasonable diligence been exercised. Hale actively participated in the meetings with his supervising parole officer and was aware of the factors supporting his release from custody in 2003. Under these circumstances, we find the trial court did not abuse its discretion in determining that Hale was not entitled to leave to file a motion for new trial based upon his discovery of certain parole records in 2018.

### 2. Newly Obtained Expert Reports

{¶ 28} Hale's motion for leave further suggests that he was unavoidably prevented from discovering the expert opinions of Dr. Filkins, a forensic pathologist, and Sutton, a bloodstain-pattern analyst. Hale contends that "trial counsel's failure to adequately investigate explains and excuses [his] failure to discover the new evidence within the 120-day post-trial deadline imposed by Crim.R. 33(B)."

{¶ 29} In this case, the issue of self-defense was highly contested at Hale's trial. Now, approximately 18 years following his convictions, Hale is attempting to

introduce the expert reports of Dr. Filkins and Sutton in an effort to undermine the state's theory that Green was "executed" or killed "execution style." Relevant to this appeal, Dr. Filkins summarized his opinion as follows:

> [I]n this case there are plausible, medically based explanations supporting Mr. Hale's version of events. Based on the material I reviewed, nothing in Mr. Hale's written statement is directly contradicted by the medical evidence in this case.

{¶ 30} In turn, Sutton rendered the following relevant opinions based on her review of the trial evidence (1) there is not sufficient evidence to conclude that the bloodstain discovered on the lower portion of the headboard in Hale's hotel room was produced as the result of a gunshot; (2) the most probable causative mechanism of the single stain on the headboard was some activity or activities that took place after the gunshots; (3) there is no scientifically reliable means to determine where the single stain of blood on the headboard originated from in this case; and (4) the finding of gunshot primer residue on the right hand of Green does not provide any information as to the posture of Green at the time the shot was fired, i.e., "whether in a defense posture, an offensive posture, or a neutral posture." (Exhibit A-14, pgs. 14-15.)

{¶ 31} Despite Hale's suggestion to the contrary, a defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel made no effort to obtain the evidence sooner. *State v. Jackson*, 8th Dist. Cuyahoga No. 108241, 2019-Ohio-4893, ¶ 20, citing *State v. Cashin*, 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289. As recognized by this court:

It is the duty of the criminal defendant and his [or her] trial counsel to make a serious effort, on their own, to discover potential, favorable evidence. *State v. Williams*, 8th Dist. Cuyahoga No. 99136, 2013-Ohio-1905, ¶ 9. Claims that evidence was undiscoverable simply because the defense did not take the necessary steps earlier to obtain the evidence do not satisfy the requisite standard [under Crim.R. 33]. *State v. Anderson*, 10th Dist. Franklin No. 12AP-133, 2012-Ohio-4733, ¶ 14; *see also State v. Golden*, 10th Dist. Franklin No. 09AP-1004, 2010-Ohio-4438, ¶ 15.

*State v. Collins*, 8th Dist. Cuyahoga No. 108486, 2020-Ohio-918, ¶ 45. To hold otherwise, would permit a convicted defendant to perpetually "'ferret out new expert witnesses to re-examine the evidence with the hope of obtaining a different result.'" *See State v. Oneil*, 11th Dist. Portage No. 2022-P-0030, 2023-Ohio-1089, ¶ 24, quoting *State v. Thompson*, 2d Dist. Montgomery No. 25016, 2012-Ohio-4862, ¶ 12.

**{¶ 32}** Applying the foregoing, we find the evidence supporting Hale's motion for leave does not, on its face, support Hale's claim that he was unavoidably prevented from discovering the evidence contained in the expert reports. Beyond conclusory statements, Hale fails to explain why neither he nor his trial counsel could not have timely discovered the allegedly new evidence at an earlier point in time. Hale and his counsel also were on notice that issues relating to gunshot residue and blood splatter were relevant to his defense, and general information on these topics was readily available. Furthermore, Hale's motion fails to recognize the significant distinction between newly discovered evidence and newly presented evidence. *See State v. McClain*, 5th Dist. Guernsey No. 2019 CA 0024, 2020-Ohio-2833, ¶ 11. Here, the opinions and affidavits of Dr. Filkins and Sutton are not based on any new information or scientific research. Rather, the experts merely

reexamined the evidence presented at trial and offered alternative theories to those raised by the state at trial. Under these circumstances, we find the trial court did not abuse its discretion in denying Hale's motion for leave to file a motion for a new trial to the extent the motion relies on the newly commissioned expert reports.

### 3. Alleged *Brady* Violations

{¶ 33} Next, Hale argued that, due to the state's suppression of evidence, he was unavoidably prevented from discovering certain supplemental police reports and notes that contain information concerning Green's sexuality and his state of mind in the days before his death. Hale alleged that the evidence was material and could have been used by defense counsel at trial to (1) explain Green's behavior during his encounter with Hale, (2) explain why Green may have had a gun in his possession on the day of the altercation, (3) support his statement to the police about the attempted sexual assault, and (4) impeach the state's evidence that "gave the jury the erroneous impression that Green was not bisexual or otherwise attracted to men." Hale maintained that he "could not have reasonably known that the state had failed to turn over such important exculpatory or impeaching evidence, [thus] establishing that this evidence was not previously available within 120 days of the verdict."

{¶ 34} In *Brady v. Maryland*, the Supreme Court of the United States recognized that the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment. 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see also Kyles v. Whitley*, 514 U.S. 419,

432, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). That "duty encompasses impeachment evidence as well as exculpatory evidence," and "it encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler v. Greene*, 527 U.S. 263, 280-281, 286, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), quoting *Kyles* at 438. The *Brady* rule applies regardless of whether evidence is suppressed by the state willfully or inadvertently. *Id.* at 282.

{¶ 35} Thus, in order to establish a due-process violation under *Brady*, the defendant must demonstrate that "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defendant; and (3) the evidence was material." *State v. Goney*, 2d Dist. Greene No. 2017-CA-43, 2018-Ohio-2115, ¶ 66. Evidence is favorable to the accused when it is exculpatory or impeaching. *State v. McNeal*, Slip Opinion No. 2022-Ohio-2703, ¶ 20, citing *Strickler* at 281-282.

> "Favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles [v. Whitley*, 514 U.S. 419,] at 433, [115 S.Ct. 1555, 131 L.Ed.2d. 490 (1995)], quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A different result is reasonably probable "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* at 434, quoting *Bagley* at 678.

*McNeal* at ¶ 20.

{¶ 36} However, as it relates to a motion for leave to file a delayed motion for new trial, the Ohio Supreme Court has clarified that "'criminal defendants have no duty to "scavenge for hints of undisclosed *Brady* material."'" *Id.* at ¶ 23, quoting

*Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 24, quoting *Banks v. Dretke*, 540 U.S. 668, 695, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). Thus, contrary to the state's contention that Hale failed to exercise reasonable diligence in obtaining the police reports and notes, the Ohio Supreme Court has clarified that "[a] defendant seeking to assert a *Brady* claim * * * is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence." *Bethel* at ¶ 25. Accordingly, a defendant satisfies the "unavoidably prevented" requirement for a *Brady* claim by establishing that the prosecution suppressed the evidence on which the defendant relies. *Id*. at ¶ 25.

{¶ 37} After careful consideration, we find Hale has made a prima facie showing that the state, either willingly or inadvertently, suppressed evidence upon which the *Brady* claims rely. In this case, Hale's motion incorporates various reports and notes that were completed by members of the Euclid Police Department during the investigation into Green's death. The records contain relevant information relating to Green's profession, his personal life, and his state-of-mind in the days leading to his death. Most significantly, the motion for leave is supported by the affidavits of Hale's former trial counsel, Jillian Davis, Esq. ("Davis"), and former postconviction counsel, Rachel Troutman, Esq. ("Troutman").

{¶ 38} In relevant part, Davis averred that she "did not recall receiving police reports or police notes" during the discovery process leading up to Hale's trial. (Davis affidavit at ¶ 4.) Davis later clarified that the disputed reports and notes attached to Hale's motion for leave were "never previously disclosed to [her]." (*Id*.

at ¶ 6.)  Troutman similarly averred that she "did not come across any of these documents while reviewing the files of [Hale's] trial attorneys" while assigned to Hale's postconviction case in 2005.  Finally, Davis and Troutman each averred that they believed the suppressed police reports and notes constituted *Brady* evidence that could have been used to impeach state witnesses at the time of trial.  (*Id.* at ¶ 8, 10, 12; Troutman affidavit at ¶ 6, 12, 15.)  As articulated by Davis:

> I was not aware of any of the evidence or documents discussed in the above paragraphs * * * before Hale's federal habeas counsel shared it with me.  This information would have changed the direction of our investigation by opening up new investigative leads.  More importantly, I could have and would have directly used each of these pieces of evidence in the two phases of Hale's trial as described above.  This evidence would have supported the self-defense argument, and countered the state's theory that Hale calculated a scheme to set Green up to execute and rob him.  I believe this information likely would have tipped the scales such that the jury would not have convicted Hale of aggravated murder, or would have chosen a life sentence instead of a death sentence.

(Davis affidavit at ¶ 19.)

**{¶ 39}** Troutman echoed Davis's sentiments, stating:

> No member of law enforcement or the prosecution ever shared the above information with me during my representation of [Hale].  I learned of it for the first time when Hale's counsel shared it with me in 2022.  I would have wanted to know all of the information contained in these withheld documents.  Had these documents, or their contents, been known to me at the time I filed [Hale's] postconviction petition, I would have used the information to raise new claims and support the claims I did raise.  Individually, and collectively, these documents undermine the state's theory at trial, support [Hale's] explanation of events, and would have helped the mitigation presentation and made it less likely the jury would have convicted or chosen the death penalty.  Because this is a case with a single aggravating factor, I believe the additional information contained in these documents could have changed the outcome at trial.

(Troutman affidavit at ¶ 22.)

{¶ 40} As previously stated, the sole issue before the trial court in this case was whether leave to move for a new trial should be granted to Hale because he was unavoidably prevented from timely moving for a new trial due to the state's suppression of evidence. *See Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 41 ("until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court"). Consistent with the Ohio Supreme Court's discussion in *Bethel*, we find the affidavits attached to Hale's motion for leave were sufficient to prove that Hale was unaware of the undisclosed documents at the time of his trial or within 120 days of his verdict. *Bethel* at ¶ 27-29 ("Two of Bethel's former attorneys provided affidavits stating that Bethel and his legal team did not know about Summary 86 before Bethel's trial. The state provides no support for its claim that these affidavits were insufficient or that Bethel needed additional evidence to prove that he was unaware of the report before trial.").

{¶ 41} We reiterate that Hale was not required to prove the merits of his *Brady* claims at this stage of the proceedings. *See State v. Phillips*, 2017-Ohio-7164, 95 N.E.3d 1017, ¶ 23 (8th Dist.) ("Although the state argues on appeal that no *Brady* violation actually occurred, its argument puts the proverbial cart before the horse. The proper place for that discussion is the new trial motion itself — if the court grants leave to file the motion."). Rather, he "was required to establish only that he was unavoidably prevented from discovering the evidence on which he seeks to base his motion." *Hatton,* 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, at ¶ 33.

Whether Hale's newly discovered evidence satisfies the remaining elements of the standards set forth in *Brady* and *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus, including whether the suppressed evidence is material, remains for the trial court to decide when adjudicating the motion for a new trial itself. Thus, we express no opinion on whether Hale should ultimately prevail on the merits of his motion for a new trial.[2]

### 4. Jury-Selection Procedures

{¶ 42} Finally, Hale argued in his motion for leave that he was unavoidably prevented from discovering evidence of "systematic jury composition issues" in the Cuyahoga County Common Pleas Court. Specifically, Hale alleged that the common pleas court in this county arbitrarily and unlawfully excluded "otherwise eligible jurors with felony convictions from its jury venire, resulting in an unlawful and underrepresented jury pool." Hale further asserted that he was prevented from raising this claim at the time of his trial or within 120 days of his verdict because the facts underlying the claim were not readily available to him until his federal habeas counsel discovered them in 2018.

---

[2] In his federal habeas proceedings, Hale attempted to raise analogous *Brady* claims and filed a motion to expand the record to include the newly discovered evidence supporting his claims. *Shoop*, N.D. Ohio 1:18-cv-504, 2021 U.S. Dist. LEXIS 61953, 302-312 (Mar. 31, 2021). In resolving the *Brady* claims, however, the federal court did not review the merits of the claims. The court's discussion, while relevant to the resolution of Hale's proposed motion for new trial on remand, was limited to the determination that Hale's *Brady* claims were procedurally defaulted and barred from habeas consideration. We further note that in holding Hale's *Brady* claims were procedurally barred, the federal court did not consider the U.S. Supreme Court's holding in *Banks v. Dretke*, 540 U.S. 668, 695, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004).

**{¶ 43}** Mindful that the merits of Hale's jury-selection claim are not properly before this court, we find the federal district court's discussion in *Hale v. Shoop*, N.D. Ohio No. 1:18-cv-504, 2021 U.S. Dist. LEXIS 61953 (Mar. 31, 2021), to be persuasive in this matter. In *Shoop*, the district court discussed the availability of the evidence supporting Hale's present jury-selection claim, stating:

> Hale was not at fault for failing to develop sooner his fair-cross-section and equal-protection claims relating to Cuyahoga County's jury-selection process (Doc. Nos. 13-8 - 13-15). The factual predicate of these claims was not apparent or readily available to Hale or his counsel at trial or before his post-conviction proceedings. *See Ambrose*, 684 F.3d at 645-46 ("to suggest that an effective defense attorney must investigate the jury assembly process in every case conditioned upon his client's loss of the right is unnecessary and wasteful") (internal citation and quotation marks omitted).

*Id*. at 340-341.[3]

**{¶ 44}** Consistent with the findings of the federal court, we find Hale established by clear and convincing evidence that he was unavoidably prevented from discovering evidence of the jury-selection practices in this county within the time period provided by Crim.R. 33(B).

### 5. Discussion of "Futility" in *Bethel*

**{¶ 45}** In reaching the foregoing conclusions, we recognize that in *Bethel* the Ohio Supreme Court discussed the futility of the defendant's underlying motion for new trial when determining whether or not the lower court erred in denying the

---

[3] While relevant to future considerations, the federal court's discussion of Hale's jury-selection claims in *Shoop* did not address or otherwise resolve Hale's present arguments concerning alleged violations of R.C. 2967.16(C)(1) and the Ohio Constitution.

defendant leave pursuant to Crim.R. 33(B).  Specifically, the *Bethel* Court concluded it "would be an exercise in futility" to proceed with a hearing on the motion for new trial because the proposed "*Brady* claim, which is the basis of his motion, is without merit."  *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 59.

{¶ 46} In *Bethel*, however, the court only contemplated the merits of the proposed motion for new trial because earlier in the same decision the court was required to assess the merits of identical claims raised in the defendant's separately filed successive petition for postconviction relief.  There, the court concluded that although the defendant was unavoidably prevented from discovering the evidence supporting his *Brady* claims, he could not satisfy the second requirement of R.C. R.C. 2953.23(A)(1), which required him to demonstrate, by clear and convincing evidence, that no reasonable factfinder would have found him guilty or eligible for the death sentence but for the constitutional error at trial.  *Id* at ¶ 40.

{¶ 47} After careful consideration, we find the discussion of futility in *Bethel* is limited to the unique circumstances presented in that case and is not applicable to the issues currently before this court.  At this time, Hale has not filed a corresponding petition for postconviction relief that relied on the same evidence or legal arguments discussed in the proposed motion for new trial.  The singular issue before the trial court, and in turn this court, concerns Crim.R. 33(B) and whether Hale was unavoidably prevented from discovering the evidence supporting his proposed motion for new trial.  Unlike the circumstances presented in *Bethel*, the parties have yet to brief the merits of Hale's claims and whether the newly

discovered evidence was material. We decline to speculate as to the arguments that may be raised in the future. To this point, we note that since the release of *Bethel*, the Ohio Supreme Court has continued to emphasize the general principle that courts may not consider the merits of a proposed motion for new trial until leave to file the motion is granted. *Hatton,* 69 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, at ¶ 30, 33; *McNeil,* Slip Opinion No. 2022-Ohio-2703, at ¶ 1, 21.

{¶ **48**} The first assignment of error is sustained in part, overruled in part.

## B. Successive Petition for Postconviction Relief

{¶ **49**} In the second assignment of error, Hale argues the trial court committed reversible error by failing to address his petition for postconviction relief pursuant to R.C. 2953.23, which was incorporated into the motion for new trial attached to Hale motion for leave. We find no merit to Hale's position.

{¶ **50**} As discussed previously, it is undisputed that "until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court." *Bethel* at ¶ 41, citing *State v. Brown*, 8th Dist. Cuyahoga No. 95253, 2011-Ohio-1080, ¶ 14. In this case, Hale did not separately file a successive motion for postconviction relief and, therefore, the state was not provided an opportunity to file a brief in opposition to such a motion. Although Hale raised alternative arguments under R.C. 2953.23 in the proposed motion for new trial attached to his motion for leave, marked Exhibit A, the proposed motion was merely an exhibit and was not properly before the court at the time leave was denied. Based on the procedural posture of the appeal before us, we find the trial court had no discretion to address

the arguments raised in the proposed motion for new trial. *See Hatton* at ¶ 30. Accordingly, the trial court did not err in limiting its judgment to the only motion properly before the court.

### III. Conclusion

{¶ 51} Because Hale established a prima facie case that he was unavoidably prevented from moving for a new trial within the time specified in Crim.R. 33(B) due to the state's suppression of the evidence and the late discovery of the jury-selection procedures in Cuyahoga County, we find the trial court abused its discretion in denying his motion for leave to file a delayed motion for a new trial on these grounds. Consequently, we reverse the trial court's judgment and remand this case to the trial court with instructions for it to grant Hale's motion for leave.

{¶ 52} The second assignment of error is overruled.

{¶ 53} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share costs herein taxed; costs waived.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE ATTACHED OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 54} I concur with the majority's determination that Hale was not entitled to file a motion for a new trial to the extent his "newly discovered" evidence consisted of his parole records predating the crime and the postconviction acquirement of forensic-expert opinions. This evidence was available to Hale at the time of his trial or otherwise could have been obtained with the exercise of reasonable diligence. With respect to the remaining evidence supporting Hale's request for leave, however, I respectfully dissent.

{¶ 55} Crim.R. 33 provides six reasons upon which an offender may seek a new trial: (1) irregularity in the proceedings that deprives the defendant of a fair trial; (2) misconduct of the jury, prosecutor, or a state's witness; (3) accident or surprise that ordinary prudence would not have guarded against; (4) verdict is not sustained by sufficient evidence; (5) legal error during trial; or (6) new evidence material to the defense is discovered that could not have been discovered with reasonable diligence in time for trial. In this case, Hale claims that there may have

been irregularities in the trial based on newly discovered evidence, and additionally he has discovered new evidence material to his defense under Crim.R. 33(A)(6).

{¶ 56} Motions for a new trial must be filed within 14 days of the verdict, extended to 120 days if based on newly discovered evidence. *Id.* "[N]ewly discovered evidence is, by definition, that 'which the defendant could not with reasonable diligence have discovered and produced at trial.' " *State v. Campbell*, 1st Dist. Hamilton No. C-950746, 1997 Ohio App. LEXIS 11, 12-13 (Jan. 8, 1997). Under the rule, a defendant who fails to timely file a motion for a new trial must seek leave from the trial court to file a delayed motion for a new trial. *State v. Dues*, 8th Dist. Cuyahoga No. 105388, 2017-Ohio-6983, ¶ 10, citing *State v. Mathis*, 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist.1999).

{¶ 57} To obtain leave, Crim.R. 33(B) requires the defendant to show clear and convincing proof that he was unavoidably prevented from timely filing his motion for a new trial. "[A] party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion * * * and *could not have learned of the existence of that ground within the time prescribed for filing the motion * * ** in the exercise of reasonable diligence." (Emphasis added.) *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984). A trial court's decision with respect to a motion for a new trial under Crim.R. 33 cannot be reversed absent an abuse of discretion. *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.). This includes any decision granting or denying an evidentiary hearing. *State v. Johnson*, 8th Dist.

Cuyahoga No. 109084, 2020-Ohio-3371, ¶ 14, citing *State v. Bonnell*, 8th Dist. Cuyahoga No. 108209, 2019-Ohio-5342, ¶ 37, and *State v. Hill*, 8th Dist. Cuyahoga No. 102083, 2015-Ohio-1652, ¶ 16.

{¶ 58} "When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave." *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 30, citing *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 41. "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Id*. Notwithstanding, even if the offender demonstrates the "unavoidably prevented" prong of the analysis, that alone is insufficient to demonstrate reversible error with the trial court's decision denying the motion for leave. If the hearing on a motion for new trial would be "an exercise in futility" in light of past decisions within the same case, no reversible error over the denial of leave has occurred. *Bethel* at ¶ 59.[4]

{¶ 59} In *Bethel*, the Ohio Supreme Court concluded that there was no *Brady* violation under the postconviction-relief analysis that the court was required to undertake in light of the arguments presented. *Id*. at ¶ 20. *Bethel* acknowledged under the separate Crim.R. 33 analysis that the same *Brady* claims should have

---

[4] *Hatton* did not overrule *Bethel*.

warranted the granting of leave to file a motion for new trial, but that act would have been futile because the trial court, in that anticipated hearing, would have been required to apply *Bethel's* analysis on the *Brady* claim in light of the fact that the offender relied on the same claim for both the postconviction relief motion and the motion for leave to file a motion for new trial. *Id.* at ¶ 59. *Bethel* thus establishes that appellate courts must consider the law of the case in reviewing a motion for leave to file a motion for new trial.

## A. Limitations of the Arguments Presented for Review

{¶ 60} In this case, as is pertinent to my disagreement with the majority's decision, Hale's claims as to demonstrating reversible error are extremely limited: he claims that (1) the state wrongfully withheld police reports despite his trial occurring during the period of time for which open discovery was not required; and (2) he did not timely discover the jury venire issue although he provides no explanation as to why he was prevented from timely discovering it.

{¶ 61} Hale's briefing, however, is limited.

{¶ 62} With respect to the withheld police reports, Hale's argument, in its entirety, is limited to the claim that

> Hale had filed multiple motions requesting access to all the relevant discovery before trial (see, e.g., Demand for Discovery, Cuyahoga C.P. No. CR 4548587, Aug. 9, 2004; Demand for Disclosure of Impeaching Information, Sept. 9, 2004; Demand for Disclosure of Exculpatory Evidence, Sept. 9, 2004), and for the prosecutor's file to be sealed for appellate review (Motion for an Order, Sept. 9, 2004). Yet this evidence was never turned over and it was not independently discovered by Hale until 2018. Regardless of any specific request, the State had a duty to turn over this information.

Because the State failed to turn over this evidence, Hale has established by clear and convincing evidence that he was unavoidably prevented from discovering the favorable, material parole and police records. See Bethel at ¶ 25 ("[T]he defendant satisfies the 'unavoidably prevented' requirement . . . by establishing that the prosecution suppressed the evidence on which the defendant relies.").

That argument is not sufficient to establish the existence of reversible error in light of the extensive appellate record in this case. *See* App.R. 16(A)(7). Hale simply presumes that the evidence is material to his defense without elaborating as to how it is material given the appellate history consistently rejecting his theory of self-defense.

{¶ 63} With respect to the exclusion of felons from the venire, Hale's claim is limited to the fact that he personally did not discover the issue until 2018. He then blames his trial counsel for the failure to investigate. There is a stark contrast between being unavoidably prevented from discovering an issue and simply not looking for it. *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 11. The question presented in this appeal is whether the trial court abused its discretion in denying Hale leave to pursue a motion for new trial on the question of excluding felons from the venire, and on this point, Hale has not argued, let alone demonstrated, that he was prevented from discovering the publicly available information.

{¶ 64} Based on the limited arguments presented for our review, I would affirm without delving deeper.

**B. Merits of Hale's Motion for Leave to File a Motion for New Trial**

**{¶ 65}** As to the merits of the motion for leave, either Hale has failed to demonstrate that he was unavoidably prevented from timely discovering the basis of his claims for a new trial, or there is no reversible error in summarily denying the motion for leave because a hearing on a motion for new trial would have been futile given the impact of earlier decisions on the arguments Hale would present to the trial court. *Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, does not require trial courts to suspend their review of the appellate history when a defendant presents the same arguments in a renewed attempt to obtain a new trial.

### 1. Alleged *Brady* Material

**{¶ 66}** Hale claims that supplements to the police report made during the investigation would have permitted him to more effectively cross-examine the state's witnesses on their knowledge of Green's sexuality, an issue discussed at trial, and also would have revealed that one member of Green's family mentioned something that could be interpreted as demonstrating that Green had suicidal ideations shortly before his murder.

**{¶ 67}** The latter claim is defective on its face. Potential evidence of a victim's suicidal ideations is not relevant to an offender's conviction for murder, especially, as is the case herein, when the offender admits to killing the victim in self-defense. On this point, Hale cannot clearly and convincingly demonstrate that he was unavoidably prevented from timely filing his motion for a new trial on this issue because he could never have raised this claim in his defense — it was not material to

his defense. *See, e.g., State v. Bullitt*, 8th Dist. Cuyahoga No. 112168, 2023-Ohio-1899, ¶ 17 (denial of the motion for leave to file a new trial was affirmed because although the police report contents were withheld from the defendant at trial, the new information did not undermine the confidence in the verdict).

{¶ 68} Although Hale is attempting to claim that the suicidal ideations demonstrate Green's alleged possession of the firearm Hale used in his murder, such a connection is pure speculation requiring an inference to be stacked upon another inference: that Green's suicidal ideations (an inference drawn from ambiguous statements made by one potential witness) provided a potential explanation as to why Green could have been carrying a handgun when the witnesses at trial stated Green was not known to possess a firearm (requiring an inference that if Green indeed had suicidal ideations, he would have committed the act with a firearm). Even if Hale presented this information to the jury, the jury would have been precluded from considering his conclusion. *See State v. Greeno*, 2021-Ohio-1372, 170 N.E.3d 1224, ¶ 32 (4th Dist.), quoting *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 N.E.2d 298 (1999) (the jury may not draw " 'draw an inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts' "). Thus, that argument would never have been a basis for filing a timely motion for new trial, much less can it be used to substantiate his newfound claims.

{¶ 69} Further with respect to the police being aware of the claims surrounding Green's sexuality, that information solely relates to Hale's claim that

Green was sexually assaulting him, the predicate allegation of his self-defense claims. According to Hale, the two police interviews, with witnesses who testified at trial and were available for cross-examination, provided evidence of Green's sexuality to support his theory of self-defense undisclosed at trial.

{¶ 70} The Ohio Supreme Court, however, concluded that Hale's story of Green attempting to sexually assault him was "not worthy of belief. Hale's version of the shooting was both internally inconsistent and inconsistent with the evidence at trial." *Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, at ¶ 266. Having more evidence of others being aware of Green's purported sexuality does not add any credence to Hale's incredible tale nor supplant the Ohio Supreme Court's earlier decision in this case. *See also State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837, ¶ 24 (concluding that "Hale's contention that the victim provoked the murder was refuted by the physical evidence [and moreover] the jury was already aware that the victim had raped another man by forcefully performing oral sex on him" such that more evidence of Green's sexuality would not "have added to his defense"). Conducting a hearing on the question of the additional evidence of Green's sexuality would be an exercise in futility in light of previous decisions concluding that Hale's claims supporting the claims of self-defense were "incredible." The trial court could not contradict those conclusions by finding Hale's self-defense claims now arguably credible.

{¶ 71} In order to demonstrate entitlement to the filing of a motion for new trial, the defendant must clearly and convincingly demonstrate that he was

unavoidably prevented from filing his motion for new trial based on new evidence material to the defense. Crim.R. 33(A)-(B). The evidence Hale identifies could never have formed the basis of a motion for a new trial because it is not material to his defense based on the law of this case. Remanding for a hearing on the motion for a new trial would be futile unless the trial court disregards the appellate history. *Hatton* does not require this expenditure of resources on settled arguments.

### a. Exclusion of Felons from Venire

**{¶ 72}** And finally, with respect to the jury commission's exclusion of felons from jury service, Hale claims that the jury commission, at the time of his trial, excluded all felons from jury service and that impacted the percentage of black persons eligible to serve on the venire. Hale extensively cites the hearing transcript from the proceedings in the criminal proceedings against Anthony Sowell[5] as a basis to demonstrate his claim. *See Hale v. Shoop,* N.D.Ohio No. 1:18-cv-504, 2021 U.S. Dist. LEXIS 61953, 45 (Mar. 31, 2021) (noting there is some evidence that the jury commission's practice of excluding felons from the venire continues to this day) and "What to Expect During Jury Duty" available at https://cp.cuyahogacounty.us/court-information/jury-duty/ (last visited Sept. 21, 2023) ("You are disqualified from service if you have been convicted of a felony *and* are currently on probation or are serving a community control sanction." (Emphasis

---

[5] Anthony Sowell was a serial killer who was convicted for murdering 11 women and subsequently sentenced to death. *See State v. Sowell,* 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 1-3.

sic.)).[6] According to the transcript in the unrelated case provided by Hale, which is within our record, the trial court denied the motion to invalidate the venire.

**{¶ 73}** Notwithstanding this observation, this issue was addressed in the federal habeas proceedings. Although Hale includes a blanket citation to certain "state" rights implicated, his entire argument is devoted to federal law interpreting the federal Constitution. Hale advanced these arguments to the federal trial court, and the decision overruling the arguments was affirmed in that appeal:

> Hale asserts that the exclusion of felons has a disproportionate impact upon Black men. "[R]acial groups cannot be excluded from the venire from which a jury is selected." *Holland v. Illinois*, 493 U.S. 474, 478, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Black people have been recognized as a distinctive group under the *Duren* test. *See Lockhart v. McCree*, 476 U.S. 162, 175, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Garcia-Dorantes v. Warren*, 801 F.3d 584, 600 (6th Cir. 2015). Cuyahoga County excluded felons rather than Black men, however, and Hale does not offer any legal authority for his supposition that felons are a distinctive group. Reasonable jurists would not find the district court's denial of this claim debatable or wrong.

*Hale v. Shoop*, 6th Cir. No. 22-3265, 2023 U.S. App. LEXIS 13645, at 7 (June 1, 2023).

**{¶ 74}** Hale has not clearly and convincingly demonstrated that he was unavoidably prevented from challenging the jury commission's alleged policy during his trial. In fact, his sole argument is that he did not discover the issue until the federal proceedings, but he makes no attempt to demonstrate how he was unavoidably prevented from discovering the issue. This district has a long history of

---

[6] Under R.C. 2961.01, no person convicted of a felony is permitted to serve on a jury while serving any portion of their sentence. The jury commission's statement is in compliance with state law.

routinely rejecting this argument. *Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, at ¶ 11 ("[t]he phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner"); *State v. Hutton*, 8th Dist. Cuyahoga No. 111432, 2022-Ohio-4509, ¶ 22; *State v. Mock*, 8th Dist. Cuyahoga No. 108837, 2020-Ohio-3667, ¶ 30. ("Claims that evidence was undiscoverable simply because the defense did not take the necessary steps earlier to obtain the evidence do not satisfy the requisite standard."), citing *State v. Anderson*, 10th Dist. Franklin No. 12AP-133, 2012-Ohio-4733, ¶ 14, and *State v. Golden*, 10th Dist. Franklin No. 09AP-1004, 2010-Ohio-4438, ¶ 15; *State v. Hubbard*, 8th Dist. Cuyahoga No. 108853, 2020-Ohio-2726, ¶ 56.

**{¶ 75}** The majority's decision undermines the steep standard for demonstrating the necessity of a belated or successive motion for new trial and permits defendants to simply demonstrate that they were not aware of the issue rather than being unavoidably prevented from discovering it. *Compare State v. McFarland*, 8th Dist. Cuyahoga No. 111390, 2022-Ohio-4638, ¶ 16 (recognizing the black-letter law that an offender must present more than the simple allegation that he did not discover the basis of the evidence he seeks to introduce to support the motion for new trial). The defendant must demonstrate both that he had no knowledge of the existence of the grounds for the new trial motion, and he "could not have learned of the existence" either. *Id.* at ¶ 16.

**{¶ 76}** The majority's conclusion reduces the inquiry to the limited demonstration that the defendant had no knowledge of the basis for the motion; the sole argument Hale presented for our review.

**{¶ 77}** Hale has not demonstrated that he could not have learned of the venire issue during his trial. In *Shoop* at 45, fn. 10, it was noted that Hale believed the policy to have been in place since 1998, but nothing within Hale's argument demonstrates how he was unavoidably prevented from using Sowell's unsuccessful tactical approach during his own trial.[7] The information was not new in 2011, nor even now. It had existed since 1998 according to Hale's own argument; although it is unclear from the record produced whether the jury commission excluded all felons or only those who are actively serving nonprison or nonjail sentences. His argument is entirely based on his subjective lack of knowledge of the jury process and the fact that policy was later challenged by another defendant.

**{¶ 78}** This is insufficient to demonstrate that he was unavoidably prevented from timely raising the argument in his own trial proceedings. *See McFarland* at ¶ 29. "[A] party is unavoidably prevented from filing a motion for a new trial if the party could not have learned of the existence of that ground within the time

---

[7] Hale has not demonstrated that he was prevented from discovering the jury commission's alleged practice. This is unlike a situation in which the venire selection defect is latent, only discoverable through extensive investigation, and was demonstrated to affect the composition of the venire. *See, e.g., Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir.2012). Hale has no evidence that the composition of the venire was affected by the alleged policy at issue, nor has Hale presented evidence of any further investigations being instigated based on the questions arising from Sowell's proceeding.

prescribed for filing the motion * * * in the exercise of reasonable diligence." *Walden*, 19 Ohio App.3d 141, at 145-146, 483 N.E.2d 859 (10th Dist.1984). Hale has not demonstrated any basis to conclude that he was unavoidably prevented from attempting Sowell's trial strategy. He simply claims to have not been aware of the issue until the federal proceedings. The majority's acceptance of Hale's argument muddies the standard of review in this district.

## C. Conclusion

{¶ 79} In light of the limited briefing presented for review and the extensive appellate history pertaining to several of the same arguments presented in the current motion for leave, I would affirm.